IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| Peter Pedersen, | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. 6:22-CV-00583-ADA-DTG |
| Adobe Inc., | § § | |
| Defendant. | § § § | |

**DEFENDANT ADOBE INC.'S MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

-ii-

# **TABLE OF CONTENTS**

                                                                               **Page**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND ..................................................................................................1

       A. The '920 Patent ...........................................................................................................1

       B. The '920 Patent Prosecution History .........................................................................3

       C. The Accused Marketo Application ............................................................................4

III. LEGAL STANDARD .............................................................................................................6

IV. ARGUMENT ..........................................................................................................................7

       A. Pedersen Fails To Plausibly Allege Direct Infringement Of At Least The Individual Message Generator Limitation .................................................................8

V. CONCLUSION ......................................................................................................................11

-iii-

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .................................................................................................6, 7

*Bot M8 LLC v. Sony Corp. of Am.*,
　4 F.4th 1342 (Fed. Cir. 2021) .................................................................................7, 11

*Chauhan v. Formosa Plastics Corp.*,
　212 F.3d 595, 2000 WL 423367 (5th Cir. 2000) ........................................................7

*Grecia Est. Holdings LLC v. Meta Platforms, Inc.*,
　No. 6:21-CV-00677-ADA, 2022 WL 2019296 (W.D. Tex. June 6, 2022) ...........7, 8, 9, 10, 11

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
　No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) .........7

*Ruiz v. Brennan*,
　851 F.3d 464 (5th Cir. 2017) ......................................................................................7

*Uniloc USA, Inc. v. ADP, LLC*,
　772 F. App'x 890 (Fed. Cir. 2019) ..............................................................................9

*Vervain, LLC v. Micron Tech., Inc.*,
　No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ........................ *passim*

**Statutes**

35 U.S.C. § 271(a) ...............................................................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .........................................................................1, 6, 7, 11

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Adobe, Inc. ("Adobe") moves to dismiss Plaintiff Peter Pedersen's ("Plaintiff" or "Pedersen") Complaint (Dkt. 1) alleging direct infringement of U.S. Patent No. 6,965,920 (the "'920 patent").

## I. INTRODUCTION

Since late November 2021, Pedersen has filed more than 16 lawsuits in this Court alleging infringement of the '920 patent against various companies. Adobe is one of those defendants in Pedersen's latest wave of cases. But the Complaint against Adobe contains material defects warranting dismissal. Indeed, Pedersen's infringement allegations are inconsistent with the statements made to the Patent Office during prosecution and thus implausible on their face. In particular, Pedersen advances infringement positions against Adobe that squarely contravene prior representations he made to the examiner to overcome prior art with respect the limitations of claim 1. To be sure, that prior art system also operates in a similar manner to how Pedersen alleges Adobe's accused product operates in the Complaint. Pedersen should not be permitted to continue litigating patent claims that he knows are based on infringement theories that he previously disclaimed during prosecution as outside the scope of the patent. As such, the claims against Adobe alleged in the Complaint are defective and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. FACTUAL BACKGROUND

### A. The '920 Patent

The '920 patent, entitled "Profile Responsive Electronic Message Management System," issued on November 15, 2005 and purports to be directed to a centralized message management system for distributing messages from messengers to recipients and a method of inputting data into such a system. (Dkt. 1-1 at Ex. A.) Claim 1 of the '920 patent, which is the only claim Pedersen

charted in the Complaint against Adobe (Dkt. 1, ¶ 17, 24; Dkt. 1-1, Exhibit B), recites "an electronic management system" with the following components:

> 1. An electronic message management system comprising:
>
> an electronic computer system in operative communication with a global digital communications network, and an electronic message management database in operative communication with the computer system; the electronic computer system having
>
> a recipient profile application for receiving recipient profile data from recipients via the global network and storing the recipient data in the database, the profile data including delivery parameters specified by a recipient of where, when and how specific types of messages from specific messengers are delivered to the recipient,
>
> a messenger profile application for receiving messenger profile data from messengers via the global network and storing the messenger data in the database, including messenger identifying data,
>
> a message input application for receiving message files from a messenger via the global network and storing the message files in the database, and
>
> ***an individual message generator in communication with the database and operative to access and utilize data and files from the database to generate an individual message to be sent to the recipient specified by the messenger*** via the global communications network according to the delivery parameters, and a message management server operating system [("Individual Message Generator Limitation")]; and
>
> the message management database including recipient and messenger profile databases for storing recipient and messenger profile data respectively, and a message database for storing message data files.

(Dkt. 1-1, Ex. A, cl. 1 (emphasis added)). As recited, claim 1 requires, *inter alia*, the receipt and storage of recipient profile data from recipients and messenger profile data from messengers, which will then be utilized by the individual message generator to generate a message to be sent to a recipient specified by the messenger and based on compatible recipient and messenger data stored in the database. (*See also* Dkt. 1-1, Ex. A, 3:48-52 ("The individual message generator of

the message management system communicates with the databases to identify messages and messenger parameters that are compatible with a recipient profile . . ..").)

### B. The '920 Patent Prosecution History

During prosecution, the examiner rejected the Individual Message Generator Limitation (highlighted above) as being disclosed in U.S. Patent No. 6,047,310 ("Kamakura") (Ex.[1] A):

> an individual message generator (23, fig. 3) in communication with the database (sends an inquiry composed of retrieval expressions to the database; [Kamakura,] col. 12, lines 61-65) and operative to access and utilize data and files from the database to generate an individual message to be sent via the global communications network to a recipient specified by a messenger (***[Kamakura,] col. 7, lines 40-65; col. 12, lines 39-65***).

(*See* Ex. B at 5-6 (Feb. 10, 2005 Office Action at pages 4-5) (emphasis added).) The Kamakura system is directed to matching advertisement transmission attributes specified by receivers with advertisement categories provided by the senders. (*See, e.g.*, Ex. A, Abs.) As cited by the examiner during prosecution against the Individual Message Generator Limitation of claim 1, the Kamakura system includes a "distribution host computer 11 [that] determines distributees of the advertisement information corresponding to the advertisement reception requirement 22 [of receivers] and the advertisement transmission requirement 34 [of senders] and generates the distribution list 25 [of receivers]." (*Id.*, 7:40-46.) The sender "selects attribute information and categories so as to narrow the selection of receivers (at step S54)" and then "the distribution list generating portion 23 retrieves advertisement reception requirements 22 [of receivers] with aggregate expressions composed of the item being selected and generates a distribution list 25 (shown in FIG. 15) including receiver IDs corresponding to the retrieval conditions (at step S55)." (*See id.*, 12:54-60.)

---

[1] "Ex." refers to the Exhibits to the Declaration of Nicholas H. Lee, concurrently filed herewith.

To traverse this office action rejection, Pedersen confirmed his claimed "individual message generator" is different than the Kamakura system because his system must generate an individual message to be sent "to a recipient *specified by a messenger*," and not to a recipient generated by the message management system:

> Another limitation of instant claim 1 is an "individual message generator. . . to generate an individual message to be sent. . . to a recipient *specified* by a messenger." Emphasis added. **To the contrary, in a combination of Kamakura and Capps (even if successfully combined) the sender transmits its message to the apparatus; it is the apparatus that designates the receiver of the message**.

(*See* Ex. B at 27 (May 27, 2005 Response at page 11) (second emphasis added).) In other words, in Pedersen's claimed system, the sender cannot send its message to the system for the system to then designate the receiver of the message. Rather, the recipient of the generated message must be specified directly by the messenger.

### C. The Accused Marketo Application

Pedersen accuses Adobe's Marketo software application of directly infringing the electronic message management system of claim 1. (Dkt. 1-1, Ex. B.) Marketo is a marketing automation application that enables users to streamline, automate, and measure marketing tasks and workflows. (Ex. C at 2-4.) The application allows Marketo users to create customer Forms that can be included in a user's webpage; the application can also generate target lists of customers based on filters applied to content collected through the Forms. (*See, e.g.*, Ex. D; Ex. E.)

With respect to the Individual Message Generator Limitation noted above, Pedersen alleges that "Marketo can generate emails as individual messages that can be sent to a specific email address associated with each particular recipient." (Dkt. 1-1, Ex. B at 15.) The totality of Pedersen's contention for this limitation is as follows:

> Each messenger's Marketo account is configured to communicate via the internet with Marketo servers, which perform the services associated with Marketo's email marketing platform. *See* https://status.adobe.com/products/3755

> Based on delivery parameters associated with a particular recipient/contact, ***Marketo can generate emails as individual messages that can be sent to a specific email address*** associated with each particular recipient. Recipients including their individual delivery parameters and email addresses are stored and organized in Marketo's contacts database. See Figs. 6-10 above.
>
> Marketo provides a segmentation feature in which messengers are able to define conditions and select a target group of recipients/contacts for a campaign to receive a specific email message. These conditions can, for example, relate to individual delivery parameters of recipients/contacts. See https://experienceleague.adobe.com/docs/marketo/using/productdocs/personalization/segmentation-and-snippets/segmentation/create-asegmentation.html?lang=en

(*Id.* (emphasis added).) As shown, Pedersen is contending that the Marketo application itself generates and specifies the target list of email recipients matching a set of conditions defined by the Marketo user (i.e., the Marketer). Nowhere does Pedersen allege that those email addresses are "specified by the messenger" as claimed.

Pedersen also references screenshots of the "Email Editor" functionality in Marketo, which he illustrates as Figures 9 and 10 of Exhibit B. (Dkt. 1-1, Ex. B at 13-14.) The Email Editor allows the Marketer, as the alleged messenger, to specify the contents of a message to be sent to recipients. These figures do not show that the Marketer is able to specify a particular recipient to which the message should be sent.





(*See id.* (showing the following fields that can be specified by the Marketer: "From Name"; "From Address"; "Reply-to"; and "Subject").)

## III.   LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted if the plaintiff has failed to allege sufficient facts to "state a claim to relief that is plausible on its face." *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *1 (W.D. Tex. Jan. 3, 2022) (Albright, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard

requires that the complaint contain "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' based on 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Ashcroft*, 556 U.S. at 678). Factors considered in determining whether the complaint meets this standard include "the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at *2 (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)).

A court considers the contents of the pleading and may also rely on matters of public record when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017); *see also Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 2000 WL 423367, at *1 (5th Cir. 2000) (holding that district court properly took judicial notice of prior state court proceedings because they "were matters of public record, which may be considered in resolving a motion to dismiss") (citation omitted). While factual allegations are construed in the light most favorable to the nonmoving party, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, No. 6:21-CV-00677-ADA, 2022 WL 2019296, at *2 (W.D. Tex. June 6, 2022) (Albright, J.) (citation omitted); *see also Vervain*, 2022 WL 23469, at *2 ("Under any standard, however, the complaint must support its entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation." (citing *Bot M8*, 4 F.4th at 1353).

**IV.   ARGUMENT**

A direct infringement claim under 35 U.S.C. § 271(a) "require[s] a showing that 'each and every limitation set forth in a claim appears in the accused product.'" *Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677, at *3 (W.D. Tex. Nov. 28, 2017)

(citation omitted). A claim of infringement is not plausible, however, if it contradicts statements made to the Patent Office. *See Grecia*, 2022 WL 2019296, *6. Here, the Complaint alleges that the Marketo application infringes claim 1 of the '920 patent, but fails to state a plausible infringement allegation because it directly contradicts Pedersen's statements made during prosecution with respect to "an individual message generator in communication with the database and operative to access and utilize data and files from the database to generate an individual message to be sent to the recipient specified by the messenger." Given his communications with the Patent Office during prosecution, Pedersen cannot pursue a theory of infringement that he already disclaimed during prosecution.

### A. Pedersen Fails To Plausibly Allege Direct Infringement Of At Least The Individual Message Generator Limitation

The plain language of claim 1 requires, *inter alia*, that the individual message generator "generate an individual message to be sent to the recipient specified by the messenger." (Dkt. 1-1, Ex. A, cl.1.)

During the prosecution of the '920 patent, Pedersen emphasized that this limitation was novel over the Kamakura prior art system. The examiner initially rejected the limitation because Kamakura described an apparatus that includes a "distribution host computer 11 that determines distribution of the advertisement information corresponding to the advertisement reception requirement 22" by "generat[ing] a distribution list 25 (shown in FIG. 15) including receiver IDs corresponding to the retrieval conditions (at step S55)" based on the sender's "select[ion] [of] one of the categories" that match "advertisement reception requirements 22 of receivers with a key of the selected category." (Ex. B at 5 (Feb. 10, 2005 Office Action at page 4) (explaining that the Individual Message Generator Limitation was obvious over Kamakura at col. 7:40-65 and 12:39-65); Ex. A, 7:40-65, 12:39-65.) To overcome that rejection, Pedersen explained that Kamakura

was distinguishable because it was "***the apparatus [of Kamakura] that designates the receiver of the message***," whereas claim 1 of the '920 patent required the receiver of the message be "specified by a messenger," not the apparatus.[2] (*See* Ex. B at 27 (May 27, 2005 Response at page 11) (emphasis added).) Stated differently, a messenger's selection of reception categories for recipients that the system then uses to generate a list of recipients—as in Kamakura—was wholly distinct from the messenger specifying a recipient, as claimed in the '920 patent.

Yet in alleging infringement against Adobe's Marketo application, Pedersen seeks to recapture precisely what he disclaimed to obtain the '920 patent—namely, contending that the electronic message management apparatus can designate the receivers of the messages based on criteria selected by a messenger. In his Complaint, Pedersen starts by alleging that the Marketo application "can generate emails as individual messages ***that can be sent to a specific email address***." (Dkt. 1-1, Ex. B at 15 (emphasis added).) Notably absent from this allegation, however, is who is specifying that email address. Is it the messenger? Is it the system? Pedersen goes on to confirm that it is the system: "Based on delivery parameters associated with a particular recipient/contact, ***Marketo can generate emails as individual messages that can be sent to a specific email address*** associated with each particular recipient. . . . ***Marketo provides a segmentation feature*** in which messengers are able to ***define conditions and select a target group of recipient/contacts*** for a campaign to receive a specific email message." (*Id.* (emphasis added).)

---

[2] It is appropriate to take judicial notice of the intrinsic record (including the prosecution history) of an asserted patent and consider it in a dismissal motion at the pleadings stage. *See Uniloc USA, Inc. v. ADP, LLC,* 772 F. App'x 890, 898 n.3 (Fed. Cir. 2019) ("The prosecution history is part of the intrinsic record of the patent" and "thus subject to judicial notice and may be considered in our de novo review of the district court's" ruling on a motion to dismiss); *Grecia*, 2022 WL 2019296, at *6 (finding that communications with the Patent Office are a matter of public record subject to judicial notice and "appropriate for this Court to consider at the pleading stage."); *Vervain*, 2022 WL 23469, at *5 (taking judicial notice of prosecution history of an asserted patent in deciding motion to dismiss).

More specifically, Pedersen is contending that the Marketo application itself generates the target group of recipients for the individual message based on conditions selected by Marketo user (as the messengers). Pedersen does not—because he cannot—allege that the Marketo user (*i.e.*, messenger) directly specifies the recipient for a message, as recited in claim 1 and emphasized during prosecution. To be sure, Pedersen's reliance on "Email Editor" screenshots from the Marketo application confirms that the application does not provide any option for the Marketo user to even specify a particular recipient. (*See* Dkt. 1-1, Ex. B, Figs. 9-10 (showing "From," "From Address," "Reply-to," and "Subject" as the only user-input fields).) Dismissal is thus warranted where, as here, Pedersen's allegations against Adobe fail to articulate a plausible theory of infringement that is consistent with the admitted scope of his invention. *See Grecia*, 2022 WL 2019296, at *6 (holding that a plaintiff-patentee "cannot plausibly allege infringement" where it "contradict[s] prior sworn statements [made to the patent office] concerning the invention's scope"); *Vervain*, 2022 WL 23469, at *8-9 (dismissing complaint where the prosecution history reflects how a limitation was "critical to the issuance" of the claims and allowed the claims "to pass to allowance" but where the complaint only pointed to accused elements without offering plausible allegations that the elements perform the relevant limitations).

Furthermore, the alleged infringing manner in which Pedersen contends Marketo operates is the same functionality as in the Kamakura prior art system that Pedersen disclaimed from his invention. As mentioned above, Kamakura includes a distribution host system that generates a distribution list of receivers (to receive advertising messages) corresponding to categories selected by senders that match the "advertisement reception requirements 22 of receivers with a key of the selected category." (Ex. A, 12:39-65; *see also* Ex. B at 6 (Feb. 10, 2005 Office Action at page 5) (citing to Kamakura, col. 12, lines 39-65 to reject the individual message generator limitation of

claim 1).) Similarly, Pedersen alleges that Marketo users "define conditions" that the application will use to "select a target group of recipient/contacts for a campaign to receive a specific email message." (Dkt. 1-1, Ex. B at 15.) The defining of conditions by Marketo users for the system to utilize in generating a target group of recipients that match those conditions (as Pedersen alleges against Adobe) is no different than the Kamakura system, which uses the selection of categories by senders to generate a distribution list of matching receivers (as was at issue during prosecution of the '920 patent). And because Pedersen previously distinguished the Kamakura functionality as outside the scope of claim 1, he cannot reclaim the same functionality in litigation to allege infringement of the same claim against Adobe. *See Grecia*, 2022 WL 2019296, at *6 (dismissing infringement allegations that contradict statements made to the patent office). Thus, Pedersen's infringement allegations in the Complaint fail to plausibly state a claim for direct infringement against the Marketo application. *See Bot M8*, 4 F.4th at 1346 ("[A] patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims."); *Vervain*, 2022 WL 23469, *5 (granting motion to dismiss because patent infringement allegations did not show the accused product met a material claim limitation).

**V.     CONCLUSION**

For the foregoing, Adobe respectfully requests that this Court grant its Motion to Dismiss Pedersen's claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: August 15, 2022         Respectfully Submitted,

                               */s/ Mark D. Siegmund*
                               Mark D. Siegmund
                               State Bar No. 24117055
                               mark@swclaw.com
                               Gregory P. Love
                               State Bar No. 24013060
                               greg@swclaw.com
                               STECKLER WAYNE CHERRY & LOVE, PLLC

8416 Old McGregor Road
Waco, Texas 76712
Tel: (254) 651-3690
Facsimile: (254) 651-3689

Michael A. Berta (*pro hac vice* to be filed)
michael.berta@arnoldporter.com
Ryan J. Casamiquela (*pro hac vice* to be filed)
ryan.casamiquela@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Tel: 415-471-3277

Nicholas H. Lee (*pro hac vice*)
nicholas.lee@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Tel: 213-243-4156

Neda Dadpey (*pro hac vice* to be filed)
neda.dadpey@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel: 212.836.7142

*ATTORNEYS FOR DEFENDANT*
*ADOBE, INC.*

-13-

## **CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record who are deemed to have consented electronic service are being served with a copy of this document via the Court's CM/ECF system, per Local Rule CV-5.

                                      */s/Mark D. Siegmund*
                                      Mark D. Siegmund